Sandra KING, a Minor, by Eldon King, her
Father and next friend, and Eldon
King, Appellants,

v.

Wayne W. BARRETT, Appellee.

No. 54330.

Supreme Court of Iowa.

March 11, 1971.

Fuerste & Carew, Dubuque, for appellants.

Kintzinger, Kintzinger, Van Etten & Setter, Dubuque, for appellee.

UHLENHOPP, Justice.

The main question in this automobile guest case is whether defendant generated a jury question on assumption of risk.

Plaintiff Sandra King, 17, lives with her parents at Epworth, Iowa, where her father, Eldon King, is town marshal. In the summer of 1968 she was keeping company with defendant Wayne W. Barrett, 21, a farm hand who owned a Rambler car. The evidence is bereft of proof that defendant was a bad driver generally or that he drove recklessly on prior occasions.

On the evening of June 27, 1968, defendant decided to go out with male companions to do some drinking, rather than to have a date with plaintiff. This caused a rift between the couple. Defendant did go out with his companions until a late hour. The next day he was tired, for he had to rise early to do chores. Also the next day, the back glass in his car was out, with the broken glass on the back seat. He claimed the glass just "popped out" and that his employer would so testify. Plaintiff evidently had a different notion.

On the afternoon following the night out, defendant came to see plaintiff, as they were to go to a movie that evening. The atmosphere was not altogether congenial because of his having been out with the boys and the broken window. After plaintiff had washed dishes from the evening meal, the couple visited friends elsewhere in Epworth and then started to Dubuque for the show.

At this point the jury could have made either of two findings. It could have found from plaintiff's discovery deposition that the rift had healed and the young couple were again in good spirits. On the other hand, it could have found from her testimony on trial that she continued to question defendant about the broken glass, he was irritated and not feeling very well anyway, and a snit was in progress.

Defendant drove east out of Epworth on old United States Highway 20 with plaintiff in the front seat. The glass in the back seat rattled and further jangled the couple's nerves. Shortly defendant turned to the north on a side road, stopped, shook the broken glass off the seat, and proceeded back to the highway. So far nothing unusual about his driving appeared, but the trial testimony discloses that the irritation continued to be present. Defendant seemed to have the impression that plaintiff was overly possessive of him.

A little farther east on old Highway 20 the couple came to a graveled road leading south a half-mile to heavily-traveled new Highway 20. Defendant had been over this road before from the opposite direction. The road contained three knolls in the half-mile, the last one cresting about 300 feet before the stop sign at the entrance to new Highway 20. No impediment to the view existed from atmosphere or darkness. As a driver comes down the last 300 feet on the graveled road, his view to the east on new Highway 20 is obstructed

until near the intersection, but the intersection itself and the stop sign there are in plain view.

The transmission in defendant's Rambler has four forward speeds and the shift lever is mounted on the floor board. For reasons unknown—since defendant suffers from amnesia regarding that last ride—when defendant turned south on the gravel his manner of driving changed. Whether he was going to "show" plaintiff because of his irritation, whether he wanted to give her a thrill by going over the knolls at high speed, or just what motivated him cannot be said. But with the three hillocks before him in that half-mile, he very rapidly accelerated by doing what is called "speed-shifting"—that is, putting the accelerator all the way down and quickly going through the gears so as to gain maximum speed in minimum time. Defendant soon got the car to 65 to 70 miles per hour, which appears to be about its top speed, and went over the knolls.

Plaintiff was scared but she was not going to say anything in view of their difficulty, and she did not say anything. Instead, she fiddled with the radio dial and looked down at defendant's foot on the accelerator. The accelerator was to the floor.

When they came to the last knoll they had only about 300 feet in which to get stopped. Plaintiff, frightened, saw defendant take his foot off the accelerator and move it to the brake, but he did not depress the brake. Instead, he put his foot back on the accelerator and floored it, and the Rambler shot out into the intersection just in time to collide with a car from the east on Highway 20. Plaintiff sustained serious injuries as a result.

The trial court submitted the case to a jury on two issues as to liability, whether defendant was reckless and whether plaintiff assumed the risk of such recklessness.

One of the contested issues on the trial was the distance available to a driver in which to slow down and stop after traversing the last knoll. Another issue was the point on the graveled road at which traffic can be seen to the east on Highway 20. A deputy sheriff and other witnesses gave estimates on the trial. A juror in the case decided to find out about these things for himself. One evening during the trial he went out, made a test drive over the road, and observed the distances. From this test drive he concluded that the distance estimate of Eldon King as a witness was inaccurate, that the estimates of King and the deputy sheriff as to visibility with respect to the stop sign were not correct, and that a driver at 60 miles per hour (the speed limit) would have difficulty stopping for the sign after coming over the last hill. When the case went to the jury, this juror related his observations to that body.

The jury returned a verdict for defendant. Hence this appeal by plaintiff and her father.

As the case comes to us, three legal issues must be decided. Did plaintiff make a case of recklessness for the jury? Did jury misconduct require another trial? Was assumption of risk for the jury?

I. On the first issue, under the law plaintiff was required to adduce substantial evidence of recklessness before a jury issue was generated. "It is the general rule that to generate a jury question there must be substantial evidence. A mere scintilla is not enough." Ellingson v. Kramer, 255 Iowa 1257, 1262, 125 N.W.2d 777, 780.

■■■ On the basis of past decisions, we have little difficulty in concluding plaintiff did introduce substantial evidence that defendant was reckless and not merely careless, if we view plaintiff's evidence in its most favorable light as we must. We need not retrace prior steps regarding the meaning of "reckless"; that has been done several times. A recent decision, one quite similar to the present case, is Winkler v. Patten, 175 N.W.2d 126 (Iowa). We think plaintiff here made a jury case on reck-

lessness, so that the other issues in the appeal must be faced. The period of recklessness was short-lived, but a persistent course of conduct is not essential. That point was decided in the Winkler case.

II. On the second issue, jury misconduct, we are aware that in this day of rapid transportation and communication jurors are frequently familiar with a locus in quo and indeed may daily drive over a scene where an accident in litigation occurred—or may go and casually look it over. We understand, too, that trial courts cannot be too punctilious in this area, lest numerous verdicts be unduly jeopardized. Situations of the kind to which we refer are illustrated by Mead v. Scott, 256 Iowa 1285, 130 N.W.2d 641, and State v. Little, 164 N.W. 2d 81 (Iowa).

But the present situation goes beyond those cases. Here a juror test-drove the road, made observations at variance with those of witnesses who testified, and related his findings to the jury. The jurors could not impeach their verdict by saying this additional information influenced them, but the collecting of the data and the reporting of it during deliberations constituted such jury misconduct as to vitiate the verdict. The parties did not know during trial of the test drive, had no opportunity to cross-examine the juror, and could not contend in argument against his findings. They had a witness in the case of whom they were unaware. We conclude that the misconduct was reasonably calculated to and probably did influence the verdict and that a new trial should have been granted on this basis. See Annot., 11 A.L.R.3d 918; Note, 10 Drake L.Rev. 126.

III. We are thus brought to the most troublesome issue—whether substantial evidence appeared that plaintiff accepted the risk of defendant's recklessness. Here again the principle applies that a scintilla of proof will not suffice. The burden to plead and prove that plaintiff accepted the risk is on defendant. Johnson

v. McVicker, 216 Iowa 654, 247 N.W. 488; Bessman v. Harding, 176 N.W.2d 129 (Iowa).

Difficulty arises in cases involving this issue because of the tendency to confound assumption of risk and contributory negligence. Contributory negligence does not require actual knowledge of the risk on the part of the injured person or an actual intent by him to take the chance of injury from it. Contributory negligence is predicated on the conduct of an ordinarily prudent person similarly situated. On the other hand, assumption of risk requires knowledge of the risk and acceptance of it. Bohnsack v. Driftmier, 243 Iowa 383, 52 N.W.2d 79. As stated in Prosser, Law of Torts, § 67 at 454 (3d Ed. 1964), "Thus assumption of risk is governed by the subjective standard of the plaintiff himself, whereas contributory negligence is measured by the objective standard of the reasonable man."

Examination of our guest cases reveals that assumption of risk contains several elements: first, recklessness or intoxication on the defendant's part must exist —that is the risk assumed; second, the plaintiff must be aware of that recklessness or intoxication and of the danger to himself from it; third, plaintiff must have an alternative of subjecting or not subjecting himself to the danger from the recklessness or intoxication—assumption of risk must be voluntary; fourth, the plaintiff must choose to accept the risk, proved expressly or by inference; and fifth, the recklessness or intoxication must be a proximate cause of the plaintiff's harm. White v. McVicker, 216 Iowa 90, 94, 246 N.W. 385, 387 ("The sum total of the application of this doctrine simply stated is that, where one is placed in the position where he has his choice of doing or not doing a given act, this doctrine applies."); Johnson v. McVicker, 216 Iowa 654, 247 N.W. 488; Stanbery v. Johnson, 218 Iowa 160, 254 N.W. 303; White v. Center, 218 Iowa 1027, 254 N.W. 90; Stingley v.

Crawford, 219 Iowa 509, 512, 258 N.W. 316, 318 ("The material point is that, before the doctrine of assumption of risk can apply, the plaintiff must have known of the danger."); White v. Zell, 224 Iowa 359, 276 N.W. 76; Wittrock v. Newcom, 224 Iowa 925, 277 N.W. 286; Edwards v. Kirk, 227 Iowa 684, 687, 288 N.W. 875, 877 ("Assumption of risk involves more or less deliberation, whereas contributory negligence implies lack of care, and hence the absence of deliberate choice."); Martin v. Momyer, 230 Iowa 1158, 300 N.W. 310; Mitchell v. Heaton, 231 Iowa 269, 1 N.W. 2d 284; Garrity v. Mangan, 232 Iowa 1188, 6 N.W.2d 292; Miller v. Mathis, 233 Iowa 221, 225, 8 N.W.2d 744, 747 ("plaintiff knowingly acquiesced in such excessive speed under adverse driving conditions for sufficient length of time to have assumed the risk of injury therefrom"—a matter of hours in a snow storm); Hansen v. Nelson, 240 Iowa 1298, 39 N.W.2d 292; Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240; Augusta v. Jensen, 241 Iowa 697, 42 N.W.2d 383; Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576; Evans v. Holsinger, 242 Iowa 990, 48 N.W.2d 250; Booth v. General Mills, Inc., 243 Iowa 206, 49 N. W.2d 561; Bohnsack v. Driftmier, 243 Iowa 383, 392–393, 52 N.W.2d 79, 84 ("The doctrine involves a choice between a course known to be dangerous and one that is not. * * * The choice is to be made more or less deliberately."); Reeves v. Beekman, 256 Iowa 263, 127 N.W.2d 95; Tuttle v. Longnecker, 258 Iowa 393, 401, 138 N.W.2d 851, 856 ("The doctrine contended for applies only where it appears plaintiff had full knowledge of the conduct claimed to be reckless and the danger of injury to himself therefrom and with such knowledge acquiesced therein. * * * The doctrine implies that plaintiff had time to choose between a course known to be dangerous and one without danger."); Christopherson v. Christensen, 258 Iowa 648, 140 N.W.2d 146; Lamaak v. Brown, 259 Iowa 1324, 147 N.W.2d 915; Berge v. Harris, 170 N.W.2d 621, 623 (Iowa) ("The doctrine of assumption of risk is based on the voluntary acceptance of the danger by plaintiff with full knowledge thereof and involves a more or less deliberate choice."); Winkler v. Patten, 175 N.W.2d 126 (Iowa); Sauer v. Scott, 176 N.W.2d 140 (Iowa); Bessman v. Harding, 176 N.W.2d 129 (Iowa); Wold v. Lacey, 182 N.W.2d 130 (Iowa).

■ We have no difficulty in finding substantial evidence that defendant was reckless, that plaintiff knew it, and that the recklessness caused plaintiff harm. But we have trouble finding substantial evidence of the two other elements—(a) that plaintiff had a viable alternative of subjecting or not subjecting herself to defendant's culpable conduct, and (b) that she did in fact choose to subject herself to the risk of it.

(a) As to the problem of alternatives, when defendant turned onto the graveled road, speed-shifted toward the knolls, and sped over them, what could plaintiff do? The burden is not on her to show she did not have alternatives; it is on defendant to show plaintiff had a choice.

Numerous cases exist where the guest has a choice. Thus if the culpable driver stops during the period of wrongful driving so that the guest has the chance to alight, the guest obviously has a choice. E. g., Kelly v. Checker White Cab, 131 W. Va. 816, 50 S.E.2d 888; Hemington v. Hemington, 221 Mich. 206, 190 N.W. 683 (guest re-entered car). See also Restatement, Torts 2d § 496C, Illustration 6 (sleeping guest awakens with car stopped in precarious position—guest could get out). Contrast Tuttle v. Longnecker, 258 Iowa 393, 401, 138 N.W.2d 851, 856 ("Just what choice other than to stay in the car was then open to her is not apparent."); Comment, 25 Iowa L.Rev. 690. We are inclined to think that defendant in the present case did not adduce substantial proof plaintiff had an alternative.

(b) We are clearer on the other question —whether defendant adduced substantial

proof of acceptance of the risk. This is not, of course, a case of express assumption of risk. Defendant relies on an implication from the circumstances that plaintiff chose to take the risk—as the American Law Institute puts it, "circumstances that manifest his [her] willingness to accept it". Restatement, Torts 2d § 496C(1).

We have searched the evidence for circumstances rising to the level of substantial evidence that plaintiff did actually choose to accept the danger of defendant's recklessness,. viewing the evidence in defendant's favor. We realize that defendant is handicapped by his amnesia so that he cannot relate his version of that fateful half-mile ride, but lack of evidence does not constitute affirmative evidence and defendant has the burden. Defendant does not testify to previous occasions involving recklessness or to a course of such conduct from which a jury might infer plaintiff knew when she entered the car she was taking a ride with a reckless driver but chose to do so to be with him or for the thrill. Cf. Bugh v. Webb, 231 Ark. 27, 328 S.W.2d 379 (drag racing on previous occasions).

The only evidence of the half-mile ride itself comes from plaintiff's lips, and defendant is obliged to try to make his affirmative defense from that. The only variation of significance in plaintiff's testimony (on discovery and on trial) pertains to whether the couple was or was not having a spat. Assuming it to be in defendant's favor that the parties had made up, we have this: a normal ride up to the time defendant turned south, then speed-shifting to high speed, a ride at that speed over the knolls, plaintiff afraid and watching defendant's foot on the accelerator as she turned the radio dial, defendant's release of the accelerator, and then his depression of it as he drove down into the intersection.

In reconstructing automobile mishaps after the fact, a tendency exists to assume the participants made deliberate choices. Actually most mishaps occur very quickly. If this defendant averaged only 50 miles per hour that last half-mile, the ride took 36 seconds. If he went down those last 300 feet at only 50 miles per hour, that part of the ride took less than five seconds. The setting does not appear to be one for a "more or less deliberate choice," bearing in mind that defendant must adduce substantial evidence of choice. The case is not like those in which, for example, the guest rides for a considerable period at high speed in adverse weather and a reasonable inference arises that he chose to take the chance. See Miller v. Mathis, 233 Iowa 221, 8 N.W.2d 744.

About the only circumstance defendant can point to for an implication plaintiff chose to take the risk is her failure to cry out—she admits she did not cry out. This might be evidence of failure to exercise the care of an ordinarily prudent person, sufficient to carry contributory negligence to the jury. We do not decide that point, as contributory negligence is not involved. But our question is not whether plaintiff ought to have remonstrated as bearing on contributory negligence; our question is whether her failure to do so constitutes substantial evidence she intended to subject herself to defendant's recklessness. Is not the circumstance of her failure to cry out in those 36 seconds as consistent with fright as with choice? We think that circumstance is but a scintilla at most.

We conclude that this is not a case for application of assumption of risk and that the jury should not have been permitted to consider that defense.

Reversed.

All Justices concur, except LARSON, J., who takes no part.