STATE of Iowa, Appellee,

v.

Mark R. SAULS, Appellant.

No. 85–521.

Supreme Court of Iowa.

July 23, 1986.

Mark D. Cleve of McDonald, Stonebraker & Cepican, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., and Elaine C. Kopf, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, SCHULTZ, CARTER and LAVORATO, JJ.

McGIVERIN, Justice.

Defendant Mark R. Sauls obtained further review of the court of appeals decision which affirmed his conviction of second degree murder in violation of Iowa Code section 707.3 (1981). Defendant asserts that the court of appeals erred in refusing to hold that the trial court abused its discretion in denying his motion for new trial based on juror misconduct. We affirm the decision of the court of appeals and the judgment of the trial court.

Defendant Sauls and co-defendant Michael Marit, were accused of stabbing Steven Estabrook in Estabrook's Volvo automobile in December 1982. Estabrook ran from the car and later died of stab wounds. Sauls and Marit were tried together before a jury, and both were convicted of murder in the first degree. Iowa Code § 707.2. Defendant's conviction was reversed on appeal, *State v. Sauls*, 356 N.W.2d 516 (Iowa 1984), and he was retried separately again to a jury.

The evidence at trial indicated that when the stabbing occurred, the victim was in the driver's seat of his Volvo. Marit was

in the front passenger seat and defendant was in the back seat of the automobile. The State's case against defendant consisted of three theories of criminal responsibility. The first was that defendant had stabbed the victim himself. The second was that defendant had aided and abetted Marit by actively participating in the stabbing or by encouraging him in some manner before or during the robbery. The third was based on joint criminal conduct, that the stabbing had occurred in furtherance of a robbery in which defendant had knowingly participated.

The jury retired for deliberations in the afternoon on Friday, January 25, 1985. The court later allowed the jurors to separate for the weekend. They were instructed to return to continue their deliberations on Monday morning, January 28. Shortly after noon on Monday, the jury returned a verdict finding defendant guilty of second degree murder.

Defendant then filed a motion for new trial, Iowa Rule of Criminal Procedure 23(2), asserting jury misconduct as one of the grounds. Iowa R.Crim.P. 23(2)(b)(3). *See also* Iowa R.Civ.P. 244(b). A signed and sworn affidavit of the jury foreman [1] was attached to defendant's motion. The affidavit stated that over the weekend separation, two of the jurors independently conducted experiments by entering two different Volvo automobiles, other than the one involved in this case, to ascertain the amount of space between the two front seats. These were apparent attempts to test one of the defense theories that Sauls could not have reached over the front seat from the back seat of the vehicle to stab Estabrook. When the jury reconvened on Monday morning, the two jurors informed

the rest of the jury of their experiments and the results which were unfavorable to defendant.

In overruling defendant's motion for new trial, the court found on the issue of jury misconduct that because extensive pictures of and testimony concerning the interior of the victim's car had been admitted into evidence, the results of the experiments were not prejudicial because such information was already before the jury.

Defendant appealed, and we transferred the case to the court of appeals. That court affirmed the trial court. Now, on further review of the court of appeals decision, defendant contends that court erred in refusing to hold that the trial court abused its discretion in denying his motion for new trial based on juror misconduct. Defendant does not challenge other issues decided by the court of appeals. We do not choose to exercise our discretion to consider and address them. *See In re Marriage of Zabecki,* 389 N.W.2d 396, 401 (Iowa 1986); *Shivvers v. Mueller,* 340 N.W.2d 586, 588 (Iowa 1983).

I. *Juror Misconduct.* Initially we note that the trial court has broad discretion in ruling on a motion for new trial based on jury misconduct. *Moore v. Vanderloo,* 386 N.W.2d 108, 118 (Iowa 1986); *State v. Cullen,* 357 N.W.2d 24, 27 (Iowa 1984). We do not find an abuse of discretion unless the trial court action was "clearly unreasonable under the attendant circumstances." *State v. Harrington,* 349 N.W.2d 758, 761 (Iowa 1984). Thus, we examine the trial court's ruling in light of these well-settled principles.

█ In *Cullen,* we formulated a three-part test based on our previous opinions to

---

1. The affidavit provided as follows:

I, Wilford J. Stoker, after first being duly sworn on oath do depose and state that I was the foreman of the jury that found Mark R. Sauls guilty of the crime of Murder in the Second Degree on January 28, 1985. I further state that during the weekend recess two of the jurors conducted experiments on their own by entering two different Volvo automobiles to investigate whether or not there was sufficient room between the two front seats for an individual

sitting in the rear seat to stab a person sitting in the driver's seat. The result of the experiment which determined that the stabbing was possible was brought to the attention of the jury during deliberations on Monday morning.

Although this was brought into the jury room and to the attention of the jury, it did not influence my decision as to the guilt [of] Mark R. Sauls. I cannot speak as to whether or not it influenced the decision of the other jurors.

aid us in determining whether a verdict can be impeached on the basis of jury misconduct. 357 N.W.2d at 27. First, the evidence from the jurors must consist only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct. Second, the acts or statements complained of must exceed tolerable bounds of jury deliberation by constituting jury misconduct. Third, and finally, it must appear the misconduct was calculated to, and it is reasonably probable it did, influence the verdict.[2] *Id.*

This three-part test can be applied regardless of the nature of the alleged jury misconduct.[3] Before examining the record in the present case in light of the *Cullen* test, we will consider as a background the application of the test to our previous cases involving unauthorized experiments by jurors during trial or deliberations.

In *Long v. Gilchrist*, 251 Iowa 1294, 1299, 105 N.W.2d 82, 85 (1960), an action involving an automobile collision, the court ordered the jury to be taken to view the scene of the accident. Three separate cars were taken in order to accommodate the jury. At trial, there was evidence introduced that the plaintiff Long had been traveling at a speed of seventy-five miles an hour immediately before the accident occurred. During deliberations, a member of the jury raised the question as to whether plaintiff Long's speed was a reasonable and proper one. One of the jurors who had driven some members of the jury to the scene of the accident then stated that he had been driving at a speed of seventy-five miles an hour at times during the trip, and he wondered if anyone felt unsafe. There, this court held that the alleged misconduct was not of such type to justify reversal of the trial court's overruling of defendant's motion for new trial.

In *King v. Barrett*, 185 N.W.2d 210, 213 (Iowa 1971), another automobile accident case, a juror test drove the road on which the accident occurred and made observations regarding distances which were crucial points in the case. These observations, which were at variance with those of witnesses who testified, were related to the jury. There, this court concluded that the misconduct was reasonably calculated to and probably did influence the verdict and that a new trial should have been granted on this basis. *Id.*

The jury misconduct alleged in *Fischer, Inc., v. Standard Brands, Inc.*, 204 N.W.2d 579, 584 (Iowa 1973), was that a juror had conducted an experiment with a gasoline engine and combustible material placed near its exhaust. He then reported to the jury that such an experiment did not produce ignition. Because such evidence went to a key point in the plaintiff's case and the misconduct was reasonably calculated to and probably did influence the

**2.** In his brief, defendant urges that the proper standard to be applied by this court is a "reasonable *possibility*" that the extrinsic evidence affected the verdict. *See United States v. Howard*, 506 F.2d 865, 866 (5th Cir.1975); *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir.1972). This standard was explicitly rejected in *State v. Cullen*, 357 N.W.2d 24, 28 (Iowa 1984). There, we stated that the reasonable possibility standard "was an incorrect statement of law because it impermissibly lowered the threshold at which a verdict must be set aside." We again recently concluded that alleged jury misconduct must be evaluated by the "reasonable probability" standard. *Rhiner v. City of Clive*, 373 N.W.2d 466, 478 (Iowa 1985).

**3.** In criminal prosecutions, juror misconduct falls into five broad categories. The first type occurred here, in the form of unauthorized juror experimentation. A second category is improper communications or influence by or with jurors. *See State v. Carey*, 165 N.W.2d 27, 28–30 (Iowa 1969) (coffee placed in jury room indicating it had been furnished by the county clerk of court and county attorney). A third type involves unauthorized independent inspections by jurors of a scene. *See State v. Little*, 164 N.W.2d 81, 82–83 (Iowa 1969) (members of jury made unauthorized trips to scene of defendant's arrest). A fourth category may be termed consideration of matters not in evidence. This type of misconduct occurred in *State v. Christianson*, 337 N.W.2d 502, 505–06 (Iowa 1983), when a member of the jury made a telephone call and obtained collateral information which contradicted a key witness' testimony. The final category is use of intoxicants by a juror. *See State v. Smith*, 132 Iowa 645, 651–52, 109 N.W. 115, 118 (1906). *See generally* Note, *Jury Misconduct in Iowa*, 20 Drake L.Rev. 641 (1971).

jury, this court held that a new trial should have been granted on that basis. *Id.* at 586.

The final case we consider involving juror experimentation is *State v. Houston,* 209 N.W.2d 42, 44 (Iowa 1973). In that case, several times during evening deliberations, the jury turned off the lights in the jury room to test nighttime visibility. This was done in an effort to check the accuracy of witness testimony. Defendant's motion for a new trial based on this alleged misconduct was overruled, and we affirmed. *Id.* at 45.

▇ Applying the *Cullen* three-part test and the foregoing authorities to the facts in this case, we conclude that the information related to the jurors by their fellow jurors regarding the results of the experiments with Volvo cars did not, to a reasonable probability, influence the jury's verdict.

The initial element of the *Cullen* test was satisfied by the portion of the affidavit of the jury foreman which established objective facts as to what occurred in the jury room. Such an affidavit is allowed to show purported misconduct. *Harrington,* 349 N.W.2d at 762. Focusing on the second of the three requirements discussed in *Cullen,* we conclude that it was improper for the jurors to conduct the experiments and to bring the results into the jury room. However, this does not necessarily entitle defendant to a new trial. Although defendant has proven the facts by competent evidence and established that the jurors acted improperly, he must show he was prejudiced, that the misconduct was "calculated to, and with *reasonable probability* did, influence the verdict." *Cullen,* 357 N.W.2d at 28. This is a difficult requirement to satisfy. *Id.*

We believe that under this record, the facts more closely parallel those present in *Long* and *Houston* than those that existed in *King* and *Fischer.* The experiments with the Volvos involved matters of common knowledge such as the configuration of bucket seats and the amount of space available between them. However, in *Fischer,* the combustion experiment performed by the juror contained many variables and involved technical scientific knowledge. In *King,* the experiment by the juror consisted of measurements of distance at the accident scene and estimates of visibility which were at variance with testimony at trial. This is also not within the realm of common experience. On the other hand, the knowledge acquired by the jurors in *Houston* by virtue of their test with the lighting conditions was within the realm of everyday experience and common knowledge. In *Long,* the experiment consisted only of a simple speed test.

Another factor leads us to the conclusion that there is no reasonable probability that the extrinsic information on the Volvos affected the verdict. Photographs of the automobile were admitted into evidence by both the State and defendant. State's exhibit five consists of eight photographs of the interior of the Volvo. Photograph three clearly shows that the front and back seats on the driver's side were separated by a distance of mere inches. Photographs four and five depict the bucket seats in front and show a separation between the two, starting at the lower back level and increasing in width up to the headrests. Defendant's exhibits B and C also show the distance between the bucket seats. Exhibit B is a photograph taken from the left rear interior of the car. It confirms that the back seat was within easy arm's reach of the front seats. Exhibit C depicts the automobile from the outside looking inside.

Thus, through these exhibits which were admitted into evidence and were before the jury, the jury could have observed from the pictorial record of the Volvo car involved in this case that there was ample room between the front seats for a person sitting in the rear to stab someone in the front seat.

Applying the appropriate legal standards to the facts presented in this case, we conclude that although juror misconduct occurred which resulted in extraneous information reaching the jury, there is no reasonable probability that such informa-

tion affected the jury verdict. We therefore conclude that the trial court did not abuse its discretion in denying defendant's motion for new trial.

II. *Disposition.* Accordingly, we affirm the judgment of the trial court and the decision of the court of appeals.

DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED.