# IN THE COURT OF APPEALS OF IOWA

No. 18-2077
Filed April 1, 2020


**TROY RANDALL, Individually and as administrator of the ESTATE OF TRISTON RANDALL and THE ESTATE OF TRISTON RANDALL,**
    Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**DENNIS ARY and SANDRA ARY, Co-Administrators of the ESTATE OF QUENTIN RAY ARY; and THE ESTATE OF QUENTIN RAY ARY,**
    Defendants-Appellants/Cross-Appellees.

**and**

**JACK YOUDE and VAN-HOF TRUCKING, INC.,**
    Defendants.
_____


Appeal from the Iowa District Court for Benton County, Lars G. Anderson, Judge.

Parties to a wrongful death lawsuit appeal the order granting a new trial on damages. **AFFIRMED.**

Joel T.S. Greer of Cartwright Druker & Ryden, Marshalltown, for appellants.

Vernon P. Squires and Jeremiah D. Junker of Bradley & Riley PC, Cedar Rapids, for appellees.

Kimberly S. Bartosh (until withdrawal), Stephen E. Doohen, and Zachary J. Hermsen of Whitfield & Eddy, P.L.C., Des Moines, for Jack Youde and Van-Hof Trucking, Inc.

Considered by Vaitheswaran, P.J., and Doyle and Ahlers, JJ. Greer, J., takes no part.

**DOYLE, Judge.**

Parties to a wrongful death lawsuit appeal the order granting a new trial on damages after the trial court found the jurors considered documents that were outside the record in determining damages. The defendants contend the court abused its discretion in granting a new trial on damages because the damage award was supported by the evidence rather than influenced by the extrinsic documents. On cross-appeal, the plaintiffs contend the court erred by denying their request for additur.

Seventeen-year-old Triston Randall was a passenger in a truck driven by Quentin Ary. The truck was struck by a tractor-trailer when Ary tried to cross Highway 150 without stopping at a posted stop sign. All five people in the truck were killed in the collision.

Triston's father, Troy, filed a wrongful death lawsuit against Ary's estate, both individually and as administrator of Triston's estate.[1] At trial, the parties presented expert witness evidence on the amount of the plaintiffs' damages. The plaintiffs called a forensic economist who calculated Triston's lost accumulation damages between $1,197,277 and $1,458,492. The defendants' expert witness, a retired professor of economics, calculated Triston's lost accumulation damages between $51,971 and $155,853. The jury found Ary at fault for Triston's death, and it awarded $59,205 in damages to Triston's estate for loss of accumulation but no damages to Troy for loss of consortium.

---

[1] The lawsuit also named the driver of the tractor-trailer and his employer as defendants. Because the jury found no fault on their part and they do not participate in this appeal, we refer only to Ary's estate and its administrators as the defendants.

After the jury returned its verdict, the court attendant found documents in the jury room that were not part of the record. The district court described the documents:

> There were two documents found. One is a type written document consisting of two pages that appears to have been prepared by one of the jurors. In general terms, it contains various calculations of future valuations of present sums of money using different assumptions. The second document consists of one page and appears to be a photocopy from a book with a chart containing rates of return for different asset types for various holding periods.

The plaintiffs moved for new trial, arguing the jury committed misconduct by viewing and considering extrinsic evidence during their deliberations. The plaintiffs asked the court to condition a new trial upon a damages additur, suggesting an additur of $311,706 for lost accumulation and $300,000 for lost consortium. The defendants resisted, arguing the plaintiffs could not show the misconduct likely impacted the jury's decision. The trial court granted a new trial on damages and, on that basis, stated it "need not address" the request for additur.

We review a grant of new trial based on jury misconduct for an abuse of discretion. *See Ten Hagen v. DeNooy*, 563 N.W.2d 4, 10 (Iowa Ct. App. 1997). An abuse of discretion occurs if the trial court's actions were clearly unreasonable under the circumstances. *See id.* To impeach a verdict based on jury misconduct, "it must appear the misconduct was calculated to, and with reasonable probability did influence the verdict." *Id.* (quoting *State v. Arnold*, 543 N.W.2d 600, 605 (Iowa 1996)).

The trial court determined that the documents found in the jury room appear to be have been intended to help the jury calculate the plaintiffs' damages. It noted that the jury's award did not correspond neatly to any of the numbers provided by

the experts.[2] On this basis, the court determined that "the jury performed their own calculations" of damages and that there was "a reasonable probability that these calculations were influenced by the documents."

The defendants argue the plaintiffs fail to show a reasonable probability that the extrajudicial documents influenced the verdict. They note that the jury's damage award "is within the range" provided by their expert witness. But the question is not whether the jury's verdict aligns with the evidence presented, but whether outside evidence influenced its decision.

In reaching its conclusion, the court cited *State v. Whited*, No. 00-1333, 2002 WL 180362, at *1-2 (Iowa Ct. App. Feb. 6, 2002), in which a jury verdict in a criminal prosecution for sexual abuse was questioned when the court learned that the jurors had consulted evidence outside the record.[3] The defendant moved for new trial based on jury misconduct, which the district court denied after determining the extrajudicial evidence was not prejudicial because it was "consistent with the other information available and provided during the course of

---

[2] The defendants' expert calculated three different projections for lost accumulation based on average earnings: one based on Triston only graduating high school, one based on completion of an associate degree, and one based on completion of a bachelor degree. Although the jury's award of $59,205 falls between the lowest and highest figures the defendants' expert gave, it does not fit within any of the three individual ranges calculated by the expert. The closest range is based on high school graduation, with the expert calculating lost accumulation to be between $51,971 and $54,838.

[3] In *Whited*, the jury consulted both dictionary and medical dictionary definitions of "trichomonas," which the complaining witness had been diagnosed with. 2002 WL 180362, at *2. Both definitions described trichomonas as a "sexually transmitted disease." *Id.* During trial, the complaining witness's doctor testified that trichomonas is sexually transmitted and, "if there's a positive, that means there has been some sexual contact." *Id.* But on cross-examination, the doctor admitted trichomonas can also be transmitted from contact with inanimate objects, like toilet seats. *Id.*

the trial." *Whited*, 2002 WL 180362, at *2-3. On appeal, this court acknowledged that the extrajudicial evidence "was consistent" with the evidence presented at trial and did not contradict it. *Id.* at *3. But we concluded the jury's misconduct warranted reversal because the outside evidence "did not present a full description of the information elicited at trial." *Id.* Instead, it "reinforced" the opinion of a medical expert who testified at trial on whether the sexual abuse occurred and likely influenced the jury's verdict. *Id.*

For the same reasons, we find the trial court acted within its discretion in granting a new trial on damages. The jury was confronted with two expert witnesses who provided vastly different calculations of lost accumulation damages. The jury went outside the record in consulting documents to help it decide damages. Those documents appear to have provided a calculation that fell within the range of damages provided by one expert but conflicted with the damages calculated by the other expert. Although the jury could have reached the same verdict without consulting outside evidence, there is a reasonable probability that the documents influenced its verdict. *See King v. Barrett*, 185 N.W.2d 210, 213 (Iowa 1971) (holding that where a juror went to the scene of an automobile collision and made observations that varied from those of witnesses, "the collecting of the data and the reporting of it during deliberations constituted such jury misconduct as to vitiate the verdict"); *Harden v. Illinois Cent. R. Co.*, 112 N.W.2d 324, 326 (Iowa 1961) (holding that new trial was warranted based on jury's examination of chart not in evidence that showed the average stopping distance for a vehicle on dry surfaces and "showed a different distance at a certain speed, than that testified to by witnesses").

The plaintiffs ask us to remand to the district court for entry of an additur instead of a new trial on damages. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 162 (Iowa 2004) ("If the damages are inadequate, the trial court must either grant a new trial or, if appropriate, grant an additur."). But the court granted a new trial based on juror misconduct, not inadequate damages. As noted, the jury's damage award was within the range of the evidence. Although juror misconduct may have influenced the jury's damage award, there is no basis for finding the award itself was inadequate. *See Triplett v. McCourt Mfg. Corp.*, 742 N.W.2d 600, 602 (Iowa Ct. App. 2007) (noting the court must not set aside a verdict merely because it would have reached a different conclusion; to set aside the verdict, the award must be "(1) flagrantly excessive or inadequate; (2) so out of reason as to shock the conscience; (3) a result of passion, prejudice, or other ulterior motive; or (4) lacking in evidentiary support").

We affirm the order granting a new trial on the damages issue.

**AFFIRMED.**