STATE of Iowa, Appellee,

v.

Kevin Roy CHRISTIANSON, Appellant.

No. 68063.

Supreme Court of Iowa.

Aug. 17, 1983.

Francis C. Hoyt, Jr., Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and Jack W. Dooley, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

The court of appeals affirmed defendant's conviction of two counts of second-degree sexual abuse, a violation of Iowa Code sections 709.1, .3. Defendant filed application for further review, requesting us to review that court's failure to reverse on the ground of jury misconduct. We granted further review and now affirm the decisions of the court of appeals and the district court.

Under this record the jury could have found defendant was Cindia Dutton's boyfriend. Further, that one night when babysitting with her children, Jude, age eight, and Tawnya, age five, he subjected them to various acts of sexual abuse.

The State's case consisted largely of evidence placing the children with defendant at the time and place in issue, together with Jude's testimony concerning the acts, corroborated by his complaints to two witnesses the following morning.

Cindia Dutton, testifying for the defense, sought to impugn Jude's credibility as a witness. She described him as a troublemaker and a liar, and asserted she and the defendant had discussed sending him to a military school for disciplinary purposes. Referring to such a school, Cindia testified

"that the tuition could be partly paid by the military since my ex is a disabled veteran."

Defendant's new trial motion alleged jury misconduct on the ground juror Kay Loeffelholz had told the other jurors her son had been the victim of a sexual attack, a fact defendant asserts was not revealed on the juror questionnaire or on voir dire. He further asserts it was misconduct for juror William Hobbs to contact the Veterans Administration, learn that veteran's benefits were not available to pay Jude's military school expenses unless his father was killed in action or awarded the medal of honor, and report this fact to other jury members. Trial court overruled this motion. Defendant asserts this was error that should have been recognized by the court of appeals.

We parenthetically note defendant has never contended he was deprived of his sixth amendment right to confrontation by reason of his inability to cross-examine Hobbs. *See Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966).

### I. *General Principles.*

▪ Our decisions have distinguished between impermissible inquiries into the internal workings of the jury and evidence of "external matters improperly brought to bear on the [jury's] deliberations [that] may be used to attack a verdict." *Crowley v. Glessner*, 328 N.W.2d 513, 514 (Iowa 1983); *State v. Rouse*, 290 N.W.2d 911, 916–17 (Iowa 1980).[1]

▪ We have held jury misconduct justifies a new trial only if the defendant produces proof, by competent evidence, that the misconduct "was calculated to, and it is reasonably probable that it did, influence the verdict." *State v. Cuevas*, 288 N.W.2d 525, 535 (Iowa 1980); *Harris v. Deere & Co.*, 263 N.W.2d 727, 730 (Iowa 1978).

▪ Trial courts possess "broad discretion" in deciding whether evidence of alleged jury misconduct warrants a new trial. *State v. Cuevas*, 288 N.W.2d at 535; *State v. Cuevas*, 281 N.W.2d 627, 632 (Iowa 1979); accord *State v. Feddersen*, 230 N.W.2d 510, 514 (Iowa 1975). We do not find an abuse of discretion unless "such discretion was exercised on grounds ... or to an extent clearly unreasonable." *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982).

### II. *Juror Loeffelholz's Conduct.*

By affidavit attached to the State's resistance to the new trial motion, juror Loeffelholz admitted relating the experience that her son was a victim of sexual abuse. Defendant argues trial court should have granted his motion for new trial because Loeffelholz was guilty of misconduct in relating this experience and in not disclosing the event on voir dire or on the jury questionnaire.

▪ At the threshold, we note the record contains neither a transcript of the voir dire examination nor any jury questionnaire. Generally, "[i]t is defendant's obligation to provide this court with a record affirmatively disclosing the error relied upon." *State v. Ludwig*, 305 N.W.2d 511, 513 (Iowa 1981); accord *State v. Mark*, 286 N.W.2d 396, 402 (Iowa 1979); *State v. Bakker*, 262 N.W.2d 538, 544 (Iowa 1978). A defendant may waive error by failing to provide us with a record that affirmatively shows the basis of the alleged error. *State v. Campbell*, 294 N.W.2d 803, 811 (Iowa 1980).

▪ Defendant has not demonstrated Loeffelholz was asked any questions that would elicit the information about her son, either on the questionnaire or on voir dire.

---

1. The *Rouse* summarization of the rule is substantially the same as Federal Rule of Evidence 606(b), which provides in part:

     Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ... except that a juror may testify on the question whether extraneous prejudicial information was im-

properly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Iowa Rule of Evidence 606(b), effective 7/1/83, is identical to federal rule 606(b). This court first quoted rule 606(b) with apparent approval in *Harris v. Deere & Co.*, 263 N.W.2d 727, 730 (Iowa 1978).

We find no error on this prong of his complaint.

The second prong of the claimed Loeffelholz misconduct concerns her reference during jury deliberations to her son's sexual abuse. The State asserts this did not constitute prejudicial misconduct.

■ In *Rouse*, 290 N.W.2d at 916–17, we said the discussions of the jurors, and their motivations and mental or emotional reactions inhered in the verdict and could not be utilized in an attack on it. Loeffelholz's comment arguably falls within this protective rule.

■ Further, even if this communication were not protected by the above rule, there is insufficient indication of prejudice to cause us to conclude trial court abused its discretion in failing to grant a new trial. We reached the same result in *State v. Folck*, 325 N.W.2d 368, 372–73 (Iowa 1982), where one juror supplied the jury with information concerning an alibi witness's residence, another made statements concerning a shelter referred to in the evidence, and still another said that patrons of a certain bar were not people to be believed. In *State v. Lass*, 228 N.W.2d 758 (Iowa 1975), several jurors related personal observations of individuals experiencing hypoglycemia and diabetic attacks. We then wrote:

> Jurors undoubtedly discuss a variety of subjects in considering cases. As a practical matter, courts cannot be too strict on jury discussions or few verdicts could stand. The matters which jurors bring up and discuss in the privacy of their room largely inhere in their verdict. Trial courts have broad discretion in these matters.

*Id.* at 771 (citations omitted).

We find no error in trial court's failure to grant a new trial based on the alleged Loeffelholz misconduct.

### III. *Juror Hobbs' Conduct.*

Juror William Hobbs, during the course of trial, called the Veterans Administration and obtained information that contradicted Cindia Dutton's testimony relating to the availability of veteran's benefits for Jude's military schooling. He communicated this during jury deliberations. Defense counsel obtained affidavits from several jurors implying Hobbs' information partially influenced their belief that Cindia Dutton lied during her testimony. These affidavits were countered by affidavits obtained by the State from two other jurors.

We note preliminarily that occurrences such as this would be rarer if trial courts would give a simple oral instruction or admonition [2] along with the other oral directions given pursuant to Iowa Rule of Civil Procedure 199(a). *See Wiedenfeld v. Chicago and N.W. Transp.*, 252 N.W.2d 691, 701 (Iowa 1977).

The State concedes in its brief that Hobbs' actions constituted misconduct. We thus turn to the critical question whether Hobbs' action "was calculated to, and it is reasonably probable that it did, influence the verdict." *Cuevas*, 288 N.W.2d at 535. Our analysis is aided by reference to several of our decisions.

In *State v. Little*, 164 N.W.2d 81, 82 (Iowa 1969), defendant asserted it was jury misconduct when "several members of the jury made unauthorized trips to the scene of defendant's arrest for the express purpose of a view of the scene and were influenced by their observations and in turn influenced others of the jury." Although we held this misconduct, we reasoned that "[t]he supporting affidavits fall far short of showing any reasonable probability, as our

**2.** The following is among California's "introductory instructions":

> JUROR FORBIDDEN TO MAKE ANY INDEPENDENT INVESTIGATION
> You must decide all questions of fact in this case from the evidence received in this trial and not from any other source. [You must not make any independent investigation of the facts or the law [or consider or discuss

facts as to which there is no evidence]. This means, for example, that you must not on your own visit the scene, conduct experiments, or consult reference works for additional information.]

Comm. on Standard Jury Instructions, Civil, Super.Ct. of Los Angeles County, Cal., California Jury Instructions Civil 1 (6th ed. Supp. 1981).

decisions require, that the unauthorized view of the premises influenced the verdict." *Id.* at 83.

In an effort to determine nighttime visibility, the jury in *State v. Houston,* 209 N.W.2d 42 (Iowa 1973), experimented by turning off the jury room lights and looking through the window. We held trial court did not abuse its discretion in denying defendant's new trial motion, observing:

Historically, we have considered ... situations [of alleged jury misconduct] with a bemused but limited tolerance for the ingenuity of jurors and the realization a rigid approach would result in interminable litigation.

*Id.* at 45.

A California decision, *People v. Bullwinkle,* 105 Cal.App.3d 82, 164 Cal.Rptr. 163, *app. dismissed,* 449 U.S. 988, 101 S.Ct. 522, 66 L.Ed.2d 285 (1980), is more factually on point. In this stolen property case, defendant's friend, called by the prosecution, testified he recalled seeing no expensive equipment in defendant's apartment. When asked if defendant had a car, the friend responded he did not know, but that he and defendant would drive in the friend's car when visiting a casino where defendant was a member. Affidavits of four jurors disclosed that one juror, on her own accord, visited the casino and learned defendant was not a member. The appellate court agreed this was misconduct on the juror's part. Nonetheless, the court reasoned trial court properly overruled the new trial motion because the friend's testimony "contributed nothing to [defendant's] convictions. [The friend's] testimony as to the ... casino was irrelevant to any issue in the case. The result of the juror's independent investigation was not such as to adversely affect the jurors' impartiality, lighten the prosecution's burden of proof, or contradict any asserted defense." *Id.* at 92, 164 Cal.Rptr. at 169. The same language could be applied to the rather innocuous information obtained by juror Hobbs in the case before us.

■ In examining this asserted error, we have ignored the conflicting statements in the jurors' affidavits that Hobbs' communication did or did not affect the jury's verdict. We apply an objective rather than a subjective test in evaluating the asserted misconduct, *Rouse,* 290 N.W.2d at 916; *Harris,* 263 N.W.2d at 730–31; *State v. Hahn,* 259 N.W.2d 753, 757 (Iowa 1977), determining whether a reasonable probability exists that it influenced the verdict, *Cuevas,* 288 N.W.2d at 535; *Harris,* 263 N.W.2d at 730–31. Further, we think trial court in the exercise of its broad discretion properly could examine the claimed influence critically in light of all the trial evidence, the demeanor of witnesses and the issues presented before making a common-sense evaluation of the alleged impact of the jury misconduct. That trial court did so in this instance is disclosed by its ruling on the new trial motion, which included the following finding:

[T]he telephone call made by juror Hobbs ... related to a collateral matter—the credibility of the witness Cindia Dutton—and the Court cannot refrain from observing that her testimony would tax the credulity of all but the most naive and gullible to the utmost and her testimony did not relate to any facts concerning the commission of the offense but went to the lack of credibility of her son as opposed to the credibility of her lover, the Defendant.

■ Although the question is a close one, we cannot say under all the circumstances that trial court abused its broad discretion in overruling defendant's motion for new trial. We affirm the decision of the court of appeals and the judgment of the trial court.

DECISIONS OF COURT OF APPEALS AND DISTRICT COURT AFFIRMED.