**STATE of Iowa, Appellee,**

v.

**Mark HARRINGTON, Appellant.**

**No. 69167.**

Supreme Court of Iowa.

May 16, 1984.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and Patrick C. McCormick, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and LARSON, JJ.

HARRIS, Justice.

Defendant appeals following his conviction of second-degree murder, Iowa Code section 707.3 (1981), and willful injury, Iowa Code section 708.4. We need discuss only three of the four assignments of error. One assignment, that incriminating statements should have been suppressed, is controlled by well-settled principles and was correctly rejected by the court of appeals. It does not merit further discussion here. We vacate the decision of the court of appeals, modify and affirm the judgment of the district court, and remand the case for resentencing.

The charges arose from knifing attacks on Larry Johnson and Mark Kemp. Johnson died as a result of sixteen stab wounds; Kemp survived his wounds. On the night in question defendant and Johnson had been involved in heavy drinking and, apparently, drug abuse. After leaving a tavern they visited Kemp at his residence and soon left, intending to get something to eat.

Defendant testified he and Johnson were walking down the street at 2:30 a.m. when a car approached. Because of his intoxication he states he was unsure which of two versions of events then occurred. In each an unidentified third person was present and had a knife. Defendant claimed he slammed the third person's head into a car bumper. He was not sure whether he or another person stabbed Johnson.

Defendant later went to Kemp's residence and told Kemp he had done something wrong and that Johnson was in jail. Defendant then became upset and attacked Kemp, repeatedly stabbing him. Defendant later appeared at his sister's home, intoxicated and sobbing. He stated he had just killed two persons. He made the same admission to police officers later that night.

Defendant was charged with first-degree murder, attempted murder, and two counts of assault. The jury convicted him of second-degree murder and willful injury. Other facts relate to specific assignments.

I. Defendant complains of the exclusion of evidence of a threat against one of the victims by a third person, Danny Cain. Cain, an acquaintance of defendant and

both victims, testified as a defense witness. He denied ever making a statement to defendant that he was "going to make sure ... somebody got Larry Johnson." Defendant, on the other hand, testified that, several days before Johnson's death, Cain "expressed a desire to retaliate" against Johnson. Cain's purported threat apparently stemmed from the theft of drugs from him, or from an altercation because of that theft.

With this background, defense counsel then attempted to question defendant regarding whether Cain made a threat against Johnson the day before his death. The following record was made:

Q. Did you see Danny Cain that day?
A. Yes.

Q. And did you give him anything? A. Yes, I did.

Q. What did you give him? A. I gave him the checkbook and the wallet.

Q. And why did you give him the checkbook and the wallet? A. To prove that I had looked for the [drugs] for him.

Q. At that time ... [d]id you form an impression as to Danny reacting upon this? A. Yes, he did.

....

Q. Did you get an impression as to what Danny was going to do to Larry?

[Prosecutor]: Your Honor, I will object. This calls for speculation on the part of the witness.

[The Court]: Sustained.

Q. Did he make any threats towards Larry?

[Prosecutor]: Your Honor, I object. This calls for hearsay.

[The Court]: Sustained.

[Defense Counsel]: Your Honor, we would like to make a proffer of proof.

[The Court]: In connection with the hearsay testimony?

[Defense Counsel]: Yes, sir.

[The Court]: No. Proceed.

We disapprove the trial court's adamant refusal to allow defense counsel to make an offer of proof. In *State v. Ritchison*, 223 N.W.2d 207, 212–13 (Iowa 1974), we said the purpose of an offer of proof

is to give the trial court a more adequate basis for its evidentiary ruling and to make a meaningful record for appellate review since a reviewing court cannot predicate error upon speculation as to answers which would have been given to questions had objections thereto not been sustained. [Authorities.]

■ We are, of course, aware that endless or frivolous proffers can be vexatious and, on occasion, might become an end in themselves and interrupt the orderly trial process. Nevertheless, a proffer should never be absolutely prohibited. In cases of extreme vexation, a record invitation should be extended to counsel to make the proffer at an appropriate recess.

■ Because the purposes of an offer of proof are so important we have often held they are necessary to preserve error. *See State v. Windsor*, 316 N.W.2d 684, 688 (Iowa 1982) ("[P]rejudice will not be presumed or found when the answer to the question was not obvious and the proponent made no offer of proof."); *Matter of Estate of Herm*, 284 N.W.2d 191, 197 (Iowa 1979) (error not preserved where party fails to make offer of proof, unless "the whole record makes apparent what is sought to be proven."). In the same vein we have pointed out that a trial court's refusal to *permit* the making of an offer of proof is usually error. *See State v. Cook*, 330 N.W.2d 306, 313 (Iowa 1983); *Parrish v. Denato*, 262 N.W.2d 281, 286 (Iowa 1978).

The court of appeals reversed the trial court on the basis of this refusal. On review we find we are able to determine what the contents of the offer of proof would have been. At the hearing on his motion for a new trial, defendant explained the purpose and theory of the excluded evidence. We can treat the record then made as the missing offer of proof.

According to that record, defendant tried to inform the jury that Danny Cain and Larry Johnson had made comments

to Mark Harrington within just a few days prior to the incident .... As a matter of fact, some of the comments were made at that afternoon, and one comment was made on the prior day. [Defendant] would have testified that Danny Cain had made threats on Larry Johnson's physical safety. Danny Cain was upset [with] Larry Johnson and Mark Kemp for having [stolen drugs], and this threat upon Larry Johnson would have helped the defense in proving its theory that there were other people out there on the [street] other than just Mark Harrington and Larry Johnson.

....

Now, where that became important—not only was that important for the State to show an exception to the hearsay rule under both those statements, which were admittedly hearsay, but were subject to exceptions to the hearsay rule in that it would show the mental state of mind of both these individuals.

....

... [I]t would show the mental state of mind for Danny Cain. Danny Cain, we believe, had reason to want to retaliate against Mark Harrington and Larry Johnson. And if things happened as we contend they did, that [defendant] got jumped outside the house,—now, we're not denying that [defendant] remembers as far as having the knife or taking the knife from Larry and stabbing him, but it was what brought that about that was vital to the defense in this case. Both those people had something against Mark Harrington. It was material and relevant to our case of provocation and in self-defense—justification.

We take it, then, that the challenged ruling excluded evidence of a third person's threat to commit the act with which defendant was charged. We need not decide whether hearsay threats by a third person are admissible. Those courts which do admit hearsay threats on this basis predicate admissibility on a strong showing of relevancy and materiality. One authority explains:

There has been ... resistance ... to accepting in criminal cases threats of a third person to commit the act with which the accused is charged as evidence that the act was committed by the third person and therefore not by the accused. Although some opinions suggest an absolute exclusionary rule, others recognize a discretionary power in the trial judge to admit them if he finds sufficient accompanying evidence of motive, overt acts, opportunity, or other circumstances, giving substantial significance to the threats.

McCormick on Evidence § 295, at 700 (2d ed. 1972). In *State v. Stump,* 254 Iowa 1181, 1188, 119 N.W.2d 210, 214, *cert. denied,* 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963), we similarly said that "[e]vidence tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that such other person committed the offense." *See also State v. Rosenberg,* 238 Iowa 621, 625, 27 N.W.2d 904, 907 (1947).

■ The challenged ruling which excluded the evidence was discretionary, whether viewed as a question of relevancy, *State v. Elam,* 328 N.W.2d 314, 317 (Iowa 1982), or of hearsay, *State v. Williams,* 305 N.W.2d 428, 432 (Iowa 1981). We do not find an abuse of discretion so as to disturb discretionary rulings on admissibility unless the action of the trial court is clearly unreasonable under the attendant circumstances. *State v. DeBerg,* 288 N.W.2d 348, 351 (Iowa 1980). A showing of abuse was not made here. We cannot say that the evidence of Cain's purported threat created anything more than a "mere suspicion" that he attacked Johnson. Defendant never claimed that Cain was the unidentified third person who might have attacked the victim.

We note, too, that there was other evidence of similar threats by Cain. Hence, this additional evidence tended to be cumulative. *See Windsor,* 316 N.W.2d at 688. Moreover, the evidence of defendant's guilt was overwhelming. It is difficult to think that one additional answer

concerning an additional threat against the victim by a third party would have changed the jury's verdict.

We hold that the assignment does not constitute reversible error.

II. Another assignment addresses the trial court's refusal to grant a new trial because of claimed jury misconduct. Prior to trial, the defendant obtained an order suppressing all evidence of a shooting which occurred two years previously. According to defendant's motion in limine, defendant had shot his brother, but the incident did not result in his conviction of any crime. The motion was sustained and the order was obeyed throughout the trial. After the verdict was rendered, two jurors signed affidavits stating, insofar as material here:

[D]uring the course of deliberations, the fact was mentioned that Mark Harrington had, on a previous occasion, shot his brother. This was discussed by members of the jury.

One affidavit recited that this fact "had some [effect] on my vote on the guilty verdicts which were ultimately rendered."[1]

■ A person claiming jury misconduct is required to produce "competent" evidence to prove it. See State v. Christianson, 337 N.W.2d 502, 504 (Iowa 1983); State v. Folck, 325 N.W.2d 368, 372 (Iowa 1982). The State contends the jury affidavits are not competent because they are inadmissible hearsay. We think the affidavits are competent but affirm the trial court on the assignment because the affidavits are substantively inadequate to support the challenge.

We have always relied on jury affidavits to show purported misconduct in the jury room. See, e.g., Christianson, 337 N.W.2d at 504–06; State v. Whalen, 98 Iowa 662, 671–74, 68 N.W. 554, 556–57 (1896). In Christianson the state itself made use of jury affidavits. The case of State v. Feddersen, 230 N.W.2d 510 (Iowa 1975), cited by the State, stands only for the proposi-

tion that an affidavit must not contain hearsay. See id. at 513–14.

The use to be made of juror affidavits was explained as follows:

A juror may not by affidavit, testimony or otherwise state what influenced the jury in reaching its decision or verdict, as such showing inheres in the verdict. [Authorities.]

A juror, however, may state by affidavit or other means what actually took place in the jury rooms since actual happenings do not inhere in the verdict. [Authorities.]

State v. Jackson, 195 N.W.2d 687, 690 (Iowa 1972). This principle was most recently explained in Christianson, 337 N.W.2d at 504:

Our decisions have distinguished between impermissible inquiries into the internal workings of the jury and evidence of "external matters improperly brought to bear on the [jury's] deliberations [that] may be used to attack a verdict." [Authorities.]

■ In evaluating the asserted misconduct we apply an objective test, "determining whether a reasonable probability exists that it influenced the verdict ...." Id. at 506. We do not reverse unless the trial court abused its broad discretion in deciding this question:

Trial courts possess "broad discretion" in deciding whether evidence of alleged jury misconduct warrants a new trial. [Authorities.] We do not find an abuse of discretion unless "such discretion was exercised on grounds ... or to an extent clearly unreasonable." [Authority.]

. . . .

... Further, we think trial court in the exercise of its broad discretion properly could examine the claimed influence critically in light of all the trial evidence, the demeanor of witnesses and the issues presented before making a common-

---

1. As will be pointed out, we give no consideration to jurors' statements that the purported misconduct did or did not affect their verdict.

sense evaluation of the alleged impact of the jury misconduct.

*Id.* at 504, 506.

■ Objectively, we do not think the affidavits amounted to proof of misconduct which was calculated to influence the verdict, or that it was reasonably probable that it did. We have only the bare assertions that the shooting was mentioned. There is no hint of the context or extent of the discussion. We do not even know whether there was a claim the shooting was deliberate.

The record falls short of showing that the trial court abused its broad discretion in deciding whether alleged jury misconduct warrants a new trial. *See State v. Cuevas,* 288 N.W.2d 525, 535 (Iowa 1980).

■ III. The trial court imposed consecutive sentences. It mentioned that the sentences for the two crimes for which defendant was convicted were mandatory, but did not state any reason why the two mandatory sentences were set to run consecutively. Such a statement of reasons is required by Iowa rule of criminal procedure 22(3)(d). The State concedes the sentences must therefore be vacated and the case remanded to the district court for resentencing. *See State v. Worley,* 297 N.W.2d 368, 372 (Iowa 1980). We agree.

DECISION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT MODIFIED AND AFFIRMED; CASE REMANDED FOR RESENTENCING.