Adrienne S. MEIRICK, a Minor, by Joan MEIRICK and Dennis Meirick, her Parents and Next Friends; and Joan Meirick and Dennis Meirick, Individually, Appellants,

v.

Kent WEINMEISTER, M.D., Appellee.

No. 89–1271.

Court of Appeals of Iowa.

Aug. 30, 1990.

Judith O'Donohoe of Eggert, Erb, Ott, O'Donohoe & Frye, Charles City, for appellants.

David E. Funkhouser of Brown, Kinsey & Funkhouser, Mason City, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

This case involves a claim of medical malpractice. Appellants appeal from the decision of the district court rendering judgment against them pursuant to a jury verdict. Appellants contend they are entitled to a new trial because the jury's verdict is not supported by substantial evidence and jury misconduct. We affirm.

Adrienne Meirick was born on October 16, 1980. During Joan Meirick's pregnancy with Adrienne, she experienced a significant weight gain and high blood pressure. On October 9, Joan was diagnosed by her treating physician, appellee Dr. Kent Weinmeister, as suffering from preeclampsia.[1] Because this condition results in restriction of blood flow to the fetus, Joan was hospitalized. On October 11, Dr. Weinmeister attempted to induce labor in Joan, but this attempt was unsuccessful. Joan was then discharged from the hospital.

Joan subsequently went into labor naturally on October 15 at approximately 2:00 a.m. and was readmitted to the hospital at 11:30 a.m. Dr. Weinmeister checked on Joan at 4:00 p.m. that afternoon. At 8:00 p.m. that evening, he received a phone call from the labor nurse requesting permission to give Joan something for her pain. A second such phone call was received by Dr. Weinmeister later that evening. At 8:00 a.m. the next day, Dr. Weinmeister checked on Joan and gave orders that an electronic fetal monitor be used. Prior to that time, monitoring of the fetus was done by stethoscope or auscultation. X-rays were taken in the early afternoon to determine if Joan's pelvis could accommodate the fetus.

Dr. Weinmeister again checked on Joan at 4:00 p.m. At this point, he felt Joan's labor had progressed sufficiently that he could rupture Joan's membranes to speed the process along. At 5:16 p.m., Joan gave birth to Adrienne. Adrienne was subsequently diagnosed as being severely and profoundly retarded. Appellants brought suit against Dr. Weinmeister for medical malpractice, alleging that negligence on his part during Joan's pregnancy, labor, and delivery caused hypotic ischemic encephalogy (oxygen deprivation) to Adrienne, which in turn caused Adrienne's brain damage.

At trial, appellants' expert witnesses, Dr. Kretzschmer and Dr. Driscoll, testified to certain violations of standard of care by Dr. Weinmeister. Appellee's expert, Dr. Farb, however, testified that Dr. Weinmeister's care and treatment of Joan was consistent with accepted medical standard of care. The jury returned a verdict finding no negligence on the part of Dr. Weinmeister.

## I.

Our scope of review is on assigned errors of law. Iowa R.App.P. 4. The first issue we consider is appellants' assertion that the jury's finding of no negligence on the part of Dr. Weinmeister is not supported by substantial evidence. The general rule is "questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." Iowa R.App.P. 14(f)(10); *see Surgical Consultants, P.C. v. Ball,* 447 N.W.2d 676, 678 (Iowa App.1989).

Upon our review of the record, we find this case offers no exception to the general rule. Appellants contend that Dr. Weinmeister breached the standard of care in the following respects: (1) failing to either consult or refer Joan to a specialist after the diagnosis of preeclampsia; (2) failing to adequately monitor the fetus during both the attempted induction of labor and during the labor itself; (3) failing to make a sufficient attempt to induce labor; and (4) failing to intervene to effect a delivery at an earlier point in labor.

The expert testimony of Drs. Kretzschmer, Driscoll, and Farb differed and created questions for the trier of fact. A trier of fact has the duty to weigh evidence and ascertain the credibility of witnesses.

---

1. Preeclampsia is defined as "[a] toxemia of late pregnancy, characterized by hypertension, albuminura, and edema." *Dorland's Illustrated Medical Dictionary* p. 803 (3rd ed. 1964).

*Eventide Lutheran Home v. Smithson Elec. and Gen. Constr. Co.,* 445 N.W.2d 789, 791 (Iowa 1989); *Daboll v. Hoden,* 222 N.W.2d 727, 726 (Iowa 1974). The jury was free to reject the testimony of Drs. Kretzschmer and Driscoll and accept the testimony of Dr. Farb.

The appellants took no exception to the trial court's instruction, nor do appellants claim here there was any error in those instructions. As a part of the instruction, the court submitted special interrogatories. The first interrogatory asked the jury to determine whether or not plaintiffs had proved by a preponderance of the evidence that Dr. Weinmeister was negligent. The jury answered that interrogatory, "No."

■ It goes without saying that the plaintiffs had the burden of proving Dr. Weinmeister negligent. The plaintiffs were required to meet the burden by a preponderance of the evidence. Iowa R.App.P. 14(f)(6). In addition, the facts of this case are such that to prove negligence on the part of Dr. Weinmeister, it must be done by expert medical testimony showing the applicable standard of care and its breach. *Buckroyd v. Bunten,* 237 N.W.2d 808 (Iowa 1976).

■ As it relates to the need of expert testimony in medical malpractice cases, our appellate courts have recognized two exceptions to the rule. One is a situation where the physician's lack of care is so obvious as to be within the comprehension of a layman and requires only common knowledge and experience to understand. The other exception arises when the physician injures a part of the body not being treated. *Id.* at 812. The present case does not come within either exception.

■ As stated previously, fact questions were generated requiring this case to be submitted to the jury. It is clear from the jury's finding that appellants failed to carry their burden of proof to the satisfaction of the jury. But even if we were to assume that the evidence might support a finding that Dr. Weinmeister was negligent, we cannot say, in view of the conflicting testimony, that the burden was so strong, so overwhelming, as to compel a finding of negligence as a matter of law. *Bebensee v. Ives,* 409 N.W.2d 710 (Iowa App.1987). We find no error under this assignment.

## II.

■ Appellants also contend the trial court erred in not granting a new trial based on jury misconduct. In order to obtain a new trial on the basis of jury misconduct, three conditions must be met:

(1) [E]vidence from the jurors must consist only of objective facts as to what actually occurred in and out of the jury room bearing on misconduct;

(2) the acts or statements complained of must exceed tolerable bounds of jury deliberation; and

(3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict.

*State v. Johnson,* 445 N.W.2d 337, 341 (Iowa 1989) (quoting *State v. Cullen,* 357 N.W.2d 24, 27 (Iowa 1984).

■ The conduct complained of by appellants concerns individual jurors' relating their personal childbirth experiences during deliberations. In order to prevail on their misconduct claim, appellants must show that the misconduct was calculated to, and with reasonable probability did, influence the verdict. In evaluating this issue, the district court may "examine the claimed influence critically in light of all the trial evidence, the demeanor of the witnesses and the issues presented before making a common sense evaluation of the alleged impact of the jury misconduct." *Johnson,* 445 N.W.2d at 342 (quoting *State v. Christianson,* 337 N.W.2d 502, 506 (Iowa 1983). This requirement is not easily satisfied. *Id.* Assuming arguendo that the jurors' actions exceeded the proper bounds of jury deliberations, we find appellants failed to prove that such actions were designed to, and with reasonable probability did, influence the jury verdict. We conclude the trial court did not exceed its discretion in

denying appellants' motion for a new trial premised on jury misconduct.

AFFIRMED.