# IN THE SUPREME COURT OF IOWA

No. 22–1367

Submitted January 23, 2024—Filed March 22, 2024

**STATE OF IOWA,**

Appellee,

vs.

**SCOTT RANDOLPH LUKE,**

Appellant.

On review from Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

A defendant seeks further review of a court of appeals decision affirming his prison sentence for domestic abuse assault second, contending that the district court abused its discretion and failed to give reasons for consecutive sentences. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and McDonald, Oxley, and May, JJ., joined. McDermott, J., filed a dissenting opinion, in which Waterman, J., joined.

Karmen R. Anderson of Anderson & Taylor, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General for appellee.

**MANSFIELD, Justice.**

> Antipholus of Syracuse. Shall I tell you why?
>
> Dromio of Syracuse. Ay, sir, and wherefore, for they say every why hath a wherefore.

William Shakespeare, *The Comedy of Errors* act 2, sc. 2, ll. 44–46.

### I. Introduction.

Iowa law gives district courts the discretion to determine if sentences should be served concurrently or consecutively. But the law also requires the court to state its reasons—the whys and wherefores—for doing so.

In this case, the defendant committed domestic abuse assault while on probation for previously committing two other domestic abuse assaults. After he pleaded guilty, the district court sentenced him to two years in prison for the latter offense, revoked his probation and sent him to prison on the earlier offenses, and ordered that the sentences be served consecutively. The defendant appealed, arguing that the court abused its discretion in sentencing him to prison on the current domestic abuse assault charge. He also argued that the district court failed to adequately state its reasons for running the sentences consecutively. The court of appeals affirmed. It held that the district court did not abuse its discretion in imposing a prison term for the latest offense. It also held "by the slimmest of margins" that the district court's statement of reasons for consecutive sentences was sufficient.

On further review, we affirm the district court and the court of appeals. At the sentencing hearing, the district court gave the defendant a detailed and personalized explanation for why it was sending him to prison. Although the district court did not specifically discuss reasons for running that sentence consecutively to the sentence imposed on the probation revocation, it cured that omission in the written sentencing order, which referenced the reasons "stated

on the record" as a ground for consecutive sentences. Additionally, the sentence imposed was well within the district court's broad discretion. Accordingly, we find no error in the defendant's sentence.

## II. Background Facts and Proceedings.

In 2021, Scott Luke pleaded guilty to domestic abuse assault (strangulation) and domestic abuse assault (second offense), both aggravated misdemeanors, in violation of Iowa Code sections 708.2A(2)(*d*) (2021) and 708.2A(3)(*b*). On the strangulation charge, Luke was sentenced to an indeterminate prison term not to exceed two years. On the second offense charge, he was sentenced to 365 days in jail. All but thirty days were suspended, and he was placed on probation for two years.

The following year, Luke violated the terms of his probation by committing another domestic assault. On the evening of April 6, 2022, at around 9:00 p.m., the Mason City Police Department received a call regarding a domestic dispute between Luke and A.L.

Officer Tiedemann was the first to arrive at the residence, less than ten minutes later. He knocked on the door multiple times before Luke and A.L. answered together. According to Officer Tiedemann, A.L. "immediately came out and started showing [him] red marks around her collar bone area" and "some scratches on her neck." A.L. also had visible bruising on her side. A.L. reported that Luke had choked her to the point where she briefly became unconscious. Luke had also asked her if she wanted to die. Meanwhile, Luke claimed that he "never touched her." He suggested the scratch marks had come from the children and the bruises from the dog.

Luke was arrested and transported to the Cerro Gordo County jail. He was booked on one count of domestic abuse assault, strangulation with bodily injury.

A.L. went to the hospital that evening. Photographs showed injuries to A.L.'s elbow, hand, ribcage, neck, and chest.

Luke was later charged by trial information with domestic abuse assault impeding breathing or circulation of blood causing bodily injury, a class "D" felony, in violation of Iowa Code sections 708.1(2)(*a*) (2022), 708.2A(1), and 708.A(5).

In July 2022, the State and Luke entered into a written plea agreement that was approved by the district court. The current charge against Luke was reduced to domestic abuse assault second offense, an aggravated misdemeanor. Iowa Code § 708.2A(3)(*b*). Luke pleaded guilty to that charge without an agreement as to disposition.

On August 15, the district court held a combined hearing on Luke's probation revocation and his sentencing on the current charge. The State asked for the original sentence to be imposed on the probation revocation and for a two-year sentence to be imposed on the current domestic abuse assault second charge. Luke requested contempt as a sanction for the probation violation and no more than a suspended sentence. Luke waived his right of allocution.

The district court revoked probation on the earlier charges and imposed the original prison term; the court also sentenced Luke to two years in prison on the current domestic abuse assault second charge. Before orally pronouncing sentence on the current charge, the district court stated that it would consider Luke's need for rehabilitation and the need to protect the community. The district court then commented specifically on Luke's reaction to the reading of the victim-impact statement, stating:

> Mr. Luke, you know, obviously during the reading of the Victim Impact Statement, you had difficulty even listening to that and kind of restraining yourself. I totally get that you don't agree with some of the things that she said. I'm unable to attribute any

sort of cause for PTSD on your victim's part or any of those sorts of things so, I mean, there's limited things in that that I can consider, but I certainly can consider your almost inability to contain yourself despite your attorney's efforts. You've committed at this point at least with these two cases I have here two assaults against this woman and you appear to have no remorse for that.

. . . .

You appear to minimize your behavior.[1]

Regarding Luke's potential for rehabilitation, the court added,

At some point you have to interact with people differently than you do. That may be impacted if you aren't taking your medications or whatever is going on, I don't have any clue on those things, but, you know, that's something that's within your control whether you take your medications as prescribed or not. You obviously need them, they're beneficial when you take them, and I don't know if that factored into the situation or not. You obviously have a lot of things going on in your family dynamic. The department is involved; you've lost a child, which is heartbreaking for any parent. You're obviously without the coping mechanisms to deal with that in a healthy, law-abiding way. Those circumstances have been in place for a long time with the department. I think it's even something that I was told when we had your sentencing on your other case, which was I think a year ago tomorrow, and things are not improving. The idea of continuing to try to handle this where you do something illegal, you get arrested, you sit in jail for a while, you get out, it's just going to keep repeating itself until you make some significant changes, and I recognize, you know, . . . all those other things that [your attorney] listed, doing the [Iowa Domestic Abuse Program], but, you know, none of that was sufficient to keep us from getting back in here and having the same thing all over again, and, you know, there's a point at which the scale kind of tips on whether we believe we can address your issues in the community or whether you need to be in prison, and, you know, Mr. Luke, we're at that point.

A few moments later, after addressing the no-contact order and some other matters, the district court also ordered that the probation revocation sentence and the current sentence be served "consecutively to each other" without further

---

[1]Although Luke claimed to have remorse, moments earlier Luke had characterized his own behavior as merely "yelling at [A.L.] and causing her emotional damage."

explanation. Subsequently, the court entered a written sentencing order that stated,

> **IT IS THEREFORE ORDERED** that taking into account Defendant's age, attitude, criminal history, and employment, financial and family circumstances, as well as the nature of the offense, including whether a weapon or force was used in the commission of the offense, the recommendations of the parties, and other matters reflected in the Court file and record, for the protection of society and rehabilitation of Defendant:
>
> **Prison.** Pursuant to Iowa Code Sections 901.5, 902.3 and 902.9, Defendant is committed to the custody of the director of the Iowa Department of Corrections for an indeterminate term, not to exceed **two years**. The Sheriff shall transport Defendant to the reception center designated by DOC. Defendant shall be given credit for time previously served in connection with this offense. **For the reasons set forth above and/or stated on the record, the sentence shall be served CONSECUTIVELY to the sentence(s) imposed in [the probation revocation case].**

Luke appealed this sentence. He argued that the district court abused its discretion when it sentenced him to a period of incarceration and that it also failed to articulate the reasons for running the sentence consecutively to, rather than concurrent with, his sentence on the probation revocation. We transferred the case to the court of appeals. The court of appeals affirmed the district court, although it did so unenthusiastically with respect to the reasons given for consecutive sentences. After quoting the written sentencing order, the court observed,

> We find this statement of reasons sufficient—by the slimmest of margins—to explain the decision to impose consecutive sentences . . . . The spirit of the requirement of giving reasons for imposing consecutive sentences would be better met by stating specific reasons on the record rather than in nonspecific language in the written sentencing order that follows.

We accepted Luke's application for further review.

**III. Standard of Review.**

We review challenges to sentences within the statutory limits for an "abuse of discretion." *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017) (quoting *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015)). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). A "ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (quoting *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014)).

**IV. Legal Analysis.**

As we have noted, Luke appeals his sentence on the April 2022 domestic abuse assault second on two grounds.[2]

**A. Did the District Court Abuse Its Discretion in Imposing a Prison Sentence?** First, Luke argues that the district court abused its discretion in sentencing him to two years in prison rather than time served. According to him, the court should have considered "other, less invasive options" like "halfway houses, work release programs, and intensive probation" and "the amount of pretrial incarceration" before sending him to prison.

To shape this argument, Luke emphasizes that he "spent more than four months incarcerated" before being sentenced. According to Luke, this was a significant punishment and "would have taught him a valuable lesson about cause and effect and suffering the consequences of your actions." Further, he

---

[2]Generally, Iowa law bars defendants who have pleaded guilty from appealing absent good cause. *See* Iowa Code § 814.6(1)(*a*)(3). We have said "that the good-cause requirement is satisfied in this context when the defendant appeals a sentence that was neither mandatory nor agreed to in the plea bargain." *State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020). As the State concedes, Luke is appealing his sentence, and his sentence was not mandatory or agreed to in the plea agreement. Thus, Luke has good cause to appeal.

points to potentially mitigating personal facts to argue that no further imprisonment was warranted. These include his history with bipolar disorder, lack of access to proper medications, age, education level, criminal history, and the fact that one of his children had recently passed away. While Luke advances reasons why he believes a prison sentence was not warranted, Luke does not claim that the district court considered an improper factor in making its sentencing decision.

In our judicial system, district court sentencing decisions are given "a significant amount of latitude because of the 'discretionary nature of judging and the source of the respect afforded by the appellate process.' " *State v. McCalley*, 972 N.W.2d 672, 676 (Iowa 2022) (quoting *State v. Fetner*, 959 N.W.2d 129, 133 (Iowa 2021)). "Sentencing decisions that fall within the statutory limits are 'cloaked with a strong presumption in [their] favor.' " *Id.* (alteration in original) (quoting *Fetner*, 959 N.W.2d at 134).

We find that the reasons given orally by the district court at the sentencing hearing speak for themselves and demonstrate that the district court did not abuse its discretion in sentencing Luke to two years in prison.

**B. Did the District Court Fail to Give Adequate Reasons for Consecutive Sentences?** Next, Luke argues that the district court failed to provide sufficient reasons for ordering his sentence to be served consecutively to the sentence resulting from his probation revocation.

At the time Luke was sentenced, Iowa Rule of Criminal Procedure 2.23 provided, "The court shall state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(*d*) (2022).[3] This rule has been

---

[3]The rule was recently revised as part of the comprehensive review and revision of the Iowa Rules of Criminal Procedure. Consistent with prior caselaw, it now provides, "The court

interpreted as requiring district courts to give reasons for imposing consecutive sentences. *See Hill*, 878 N.W.2d at 273 ("Rule 2.23(3)(*d*) applies to the district court's decision to impose consecutive sentences.").

Rule 2.23(3)(*d*)—now rule 2.23(2)(*g*)—serves two purposes in our view. First, it "ensures defendants are well aware of the consequences of their criminal actions." *State v. Thompson*, 856 N.W.2d 915, 919 (Iowa 2014). Second, it "affords our appellate courts the opportunity to review the discretion of the sentencing court." *Id.*

In *State v. Hill*, we held that rule 2.23(3)(*d*) required the district court to state the reasons for consecutive sentencing even when the underlying statute set forth a presumption of consecutive sentences. 878 N.W.2d at 273.

The defendant in *Hill* had been convicted of burglary and assault with intent to commit sexual abuse and had served time in prison. *Id.* at 271. While on parole, he then committed a string of acts that violated the sex offender registration requirements and was charged accordingly. *Id.* The defendant pleaded guilty and was sentenced to two years in prison to be served consecutively with his parole revocation. *Id.* at 272.

The defendant appealed, arguing that the district court "failed to provide adequate reasons for the consecutive sentence." *Id.* On the record, the court had orally stated, "The reason for the sentence is protection of the community, seriousness of the crime, and the nature and circumstances of the offense." *Id.* In the sentencing order, the court simply wrote that the sentence was "to run consecutive to the parole revocation." *Id.* We concluded that the district court did enough to justify the two-year sentence but not enough to explain why that sentence would be consecutive to the sentence resulting from the parole

shall state on the record the basis for the sentence imposed and *shall particularly state the reason for imposition of any consecutive sentence.*" Iowa R. Crim. P. 2.23(2)(*g*) (2023) (emphasis added).

revocation. *Id.* at 274. Although the same reasons could support both an underlying sentence and a consecutive-sentencing decision, here "the district court, when giving reasons for [the defendant's] sentence, did not explicitly state the same reasons supported making the sentence consecutive." *Id.* at 274.

Again, we stated in *Hill* that "[s]entencing courts should also explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *Id.* at 275.

*Hill* did not come out of the blue. Our precedent required district courts to state reasons for consecutive sentences. *See State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000); *State v. Harrington*, 349 N.W.2d 758, 763 (Iowa 1984), *abrogated on other grounds by Ryan v. Arneson*, 422 N.W.2d 491 (Iowa 1988); *State v. Jason*, 779 N.W.2d 66, 77 (Iowa Ct. App. 2009).

Separately, we have held that a "boilerplate" statement of reasons does not satisfy rule 2.23(3)(*d*) and that something more specific is required. *See State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001) (en banc). For example, in *State v. Lumadue*, the court utilized "a pre-printed 'Prison Order' which included the following statement: 'The Court has determined that this sentence will provide reasonable protection of the public. Probation is denied because it is unwarranted.' " *Id.* We held that this "boilerplate" did not meet the requirements of the rule. *Id.*

The outcome in *Lumadue* makes sense because otherwise courts could sidestep the requirements of rule 2.23 and avoid making any explanation for the sentence simply by reusing a one-size-fits-all form. *See also State v. Cooper*, 403 N.W.2d 800, 802 (Iowa Ct. App. 1987) ("The present record, far from articulating the rationale behind the court's choice of sentence, states only generalized, vague considerations which we may assume advise every court in

making every sentencing decision: the circumstances of the offense and the defendant's background.").

In *State v. Thacker*, we again condemned a standardized sentencing order. 862 N.W.2d 402, 408–10 (Iowa 2015). There too, the written sentencing order was the only statement of reasons for the defendant's sentence. *See id.* at 404. The order stated, "The following sentence is based on all of the available SENTENCING CONSIDERATIONS set out in Iowa Code Section 907.5." *Id.* Additionally, the district court had checked a box on the order that said "The Plea Agreement" was "the most significant [factor] in determining [the] particular sentence." *Id.* (second alteration in original). Nothing else in the record indicated that the parties' plea agreement included an agreement as to sentence. *Id.* at 410. We upheld the defendant's challenge to her sentence. *Id.* at 408–10.

Likewise, in *State v. Thompson*, we held that a check-the-box form for the sentencing did not meet rule 2.23 standards unless specific boxes were actually marked. 856 N.W.2d at 921. Again, the written order was the only record of the sentence. *Id.* at 917. The order stated that the sentence was "based on all the available SENTENCING CONSIDERATIONS set out in Iowa Code Section 907.5." *Id.* at 918. It then read, "The court finds the following factors the most significant in determining this particular sentence: . . . ." *Id.* Underneath, the order listed fifteen options with checkboxes. *Id.* It was intended that the district court would mark the most relevant boxes. *See id.* The list included items such as "the nature and circumstances of the crime," "protection of the public from further offenses," and the like. *Id.*

Yet, the district court had failed to mark any of the options. *Id.* We held that under the circumstances, this did not amount to a valid statement of reasons. *See id.* at 921. Still we added that if properly filled out, such a

check-the-box form would be an acceptable way to express the reasons for a sentence. *Id.* As we explained,

> In this age of word processing, judges can use forms, such as the one available in this case, to check the boxes indicating the reasons why a judge is imposing a certain sentence. . . . If the sentencing order does not have boxes similar to the ones in this case, the judge can use his or her word processor to insert the reasons for a particular sentence.

*Id.*

Applying these principles here, we conclude that the district court went significantly beyond what we criticized in *Lumadue, Thacker,* and *Thompson.* For the most part, it did what a sentencing court should do. The court gave an on-the-record explanation, based on appropriate factors and tailored to the facts and circumstances of the specific case, for why it was sending Luke to prison. Its only oversight was that it failed to give any reasons at the hearing for *consecutive sentences.* But this omission was cured in the written sentencing order, where the court said that "[f]or the reasons set forth above and/or stated on the record, the sentence shall be served CONSECUTIVELY to the sentence(s) imposed in [the probation revocation case]."

The court was entitled to rely on the same reasons it had previously given for a prison term as reasons for consecutive sentences. *Hill,* 878 N.W.2d at 274–75. Furthermore, the oral colloquy and the written sentencing order may be combined to determine whether sufficient reasons have been given. *Lumadue,* 622 N.W.2d at 304 (noting that in a prior case "the sentencing colloquy, in combination with the written judgment entry, formed a sufficient basis for appellate review of the sentence for abuse of discretion"). Thus, we find the district court provided sufficient reasons for ordering the domestic assault abuse second sentence to be served consecutively to the sentence imposed on revocation of probation.

We are not saying that the written order *by itself* would have been sufficient. But here, the issue is simply whether a standardized written order can bridge the only gap that remained when an individualized on-the-record colloquy set forth the reasons for the sentence and indicated that the sentence would be consecutive to probation revocation. This situation strikes us as not materially different from the judge stating as follows at the end of the hearing: "If I forgot to give reasons for consecutive sentences, those are the same reasons as I gave for the underlying sentence itself." Because sentences are "cloaked with a . . . presumption in [their] favor," *McCalley*, 972 N.W.2d at 676 (alteration in original) (quoting *Fetner*, 959 N.W.2d at 134), we read the statement "[f]or the reasons . . . stated on the record, the sentence shall be served CONSECUTIVELY" as meaning that whatever reasons were stated on the record will be deemed the reasons for consecutive sentences.

We reiterate our guidance from *Hill* and "encourage sentencing courts to give more detailed reasons for a sentence specific to the individual defendant and crimes and to . . . explicitly state the reasons for imposing a consecutive sentence." 878 N.W.2d at 275.

**V. Conclusion.**

For the foregoing reasons, we affirm the defendant's conviction and sentence.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and McDonald, Oxley, and May, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which Waterman, J., joins.

**MCDERMOTT, Justice (dissenting).**

When a judge decides that sentences for two different crimes will run consecutively (one after the other) and not concurrently (at the same time), the judge is required to state the reasons for that decision. The majority finds that although the judge in this case didn't provide a reason for ordering consecutive sentences at the sentencing hearing, the written order filed afterward, when combined with statements at the hearing, satisfied the requirement.

But the written order didn't fix the problem. That order—whether by referring to statements from the hearing or on its own—discloses nothing about the reasons for the consecutive sentences. We're left without any explanation, as our sentencing rules require, for why the sentences must run consecutively. I thus respectfully dissent.

Iowa Rule of Criminal Procedure 2.23 requires that "[t]he court shall state on the record the basis for the sentence imposed *and shall particularly state the reason for imposition of any consecutive sentence.*" Iowa R. Crim. P. 2.23(2)(*g*) (2023) (emphasis added). This requirement existed under prior versions of our criminal rules as well. *See, e.g., State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016) (requiring district courts to give reasons for imposing consecutive sentences under an earlier version of rule 2.23).

As we've explained, the requirement primarily serves two important purposes. The first is obvious: it "ensures defendants are well aware of the consequences of their criminal actions." *State v. Thompson*, 856 N.W.2d 915, 919 (Iowa 2014). The second is perhaps less obvious, but no less important: "to give appellate courts the opportunity to review the discretionary nature of sentencing." *State v. Alloway*, 707 N.W.2d 582, 584 (Iowa 2006), *overruled on other grounds by State v. Johnson*, 784 N.W.2d 192, 197–98 (Iowa 2010); *see also*

*State v. Horton*, 231 N.W.2d 36, 41 (Iowa 1975) (en banc) (McCormick, J., concurring) (noting increasing the rationality of sentencing, the therapeutic value of sentencing on the defendant, ensuring meaningful appellate review, and informing correctional authorities of the reasoning behind the sentence as reasons for this requirement).

"When a court is given discretion in sentencing, a statement of the reasons for the sentence is necessary to allow appellate courts to determine if the discretion in imposing one form of sentence over another form was abused." *Alloway*, 707 N.W.2d at 584. We defer to sentencing judges in part because they see individual defendants up close and are best positioned to assess credibility and weigh facts such as the defendant's criminal history, personal characteristics, the nature of the offense, and so on. Sentencing judges must balance an array of factors—prospects for rehabilitation, risks for recidivism, and the need for deterrence, among others—when determining a defendant's sentence. Iowa Code § 901.5 (2024).

Appellate courts are poorly positioned to reassess or rebalance most of these factors. Jeffrey S. Sutton, *An Appellate Perspective on Federal Sentencing After* Booker *and* Rita, 85 Denv. U. L. Rev. 79, 84 (2007). We insist on an explanation from the sentencing court partly because we're ill-equipped to offer meaningful review without it. *Id.* When appellate courts fail to ensure that sentencing courts disclose the reasons for their sentences, appellate courts lose the capacity to provide a meaningful check on criminal sentencing. "[B]y requiring sentencing judges to articulate the facts on which they rely," it "encourages judicial candor, transparency, and predictability in exercising the discretion that inevitably remains." Stephanos Bibas & Susan Klein, *The Sixth Amendment and Criminal Sentencing*, 30 Cardozo L. Rev. 775, 784 (2008). The

deferential abuse of discretion standard might be thought of as "earned" by a sentencing court only when the sentencing court shows its work.

The concurrent-or-consecutive decision at the center of this appeal often stands as the most important component of a judge's sentencing decision. A defendant sentenced to ten years, for instance, on each of two separate convictions will serve only up to ten years total if the sentences are ordered to run concurrently. But he'll serve up to double that time—twenty years—if the sentences are ordered to run consecutively. The potential magnitude of the concurrent-or-consecutive decision demands adherence to the requirement imposed on courts to state reasons for the sentences imposed.

Indeed, sentencing courts are required not just to state reasons, but to "particularly" state them. Iowa Rule Crim. P. 2.23(2)(*g*). To "particularly" state something means to do so "to a higher degree than is usual or average" or "so as to give special emphasis to a point; specifically." *Particularly*, New Oxford American Dictionary 1240 (2d ed. 2005).

The State concedes, and the majority agrees, that the sentencing judge did not provide any reason for ordering consecutive sentences at the sentencing hearing. The judge simply stated that the sentences would be served consecutively to each other. The written order filed after the hearing said this about consecutive sentences: "For the reasons set forth above and/or stated on the record, the sentence shall be served CONSECUTIVELY to the sentence(s) imposed in FECR030393 [(the probation revocation case)]." (Emphasis omitted.) Unpacking this sentence, the reasons, we're told, are found in potentially three places: the record transcript of the hearing, the written order, or a combination of the transcript and written order.

We start with the reasons "stated on the record" for imposing consecutive sentences. Again, there were none. Although the district court detailed its

reasons for the sentence imposed on the assault charge—a two-year prison term with a protective order—it stated no reasons when it ordered the sentence to run consecutively with the separate two-year prison sentence imposed in the probation-revocation case. The court's statement of reasons for the sentence imposed on the assault conviction doesn't satisfy the distinct requirement to "particularly state the reason for imposition of any *consecutive sentence.*" Iowa R. Crim. P. 2.23(2)(*g*) (emphasis added).

The majority reads the written order as saying that the reasons for the assault sentence will perform double duty; in other words, that the reasons the court stated for imposing the two-year prison term on the assault conviction also serve as the reasons for imposing consecutive sentences. But the written order doesn't say that. It simply states: "For the reasons set forth above and/or stated on the record, the sentence shall be served consecutively . . . ." (Emphasis omitted.) Reference to "the reasons . . . stated on the record" logically refers to the reasons stated on the record *for ordering consecutive sentences.* The majority's reading adds words to the written order, such that we would read something like: "For the *same* reasons stated on the record *for the sentence imposed on the assault conviction,* the sentence shall be served consecutively." But none of the italicized words appear in the written order. Nor can we assume them if we are to give meaning to the separate requirement that "[t]he court shall state on the record the basis for the sentence imposed *and* shall particularly state the reason for imposition of any consecutive sentence." Iowa R. Crim. P. 2.23(2)(*g*) (emphasis added).

The majority finds daylight between this case and our reasoning in *State v. Hill,* 878 N.W.2d at 269. I don't see it. In *Hill,* we noted that the same reasons could support both a defendant's underlying sentence and the consecutive sentencing decision. *Id.* at 274. But we vacated the sentence after concluding

that "the district court, when giving reasons for Hill's sentence, did not explicitly state *the same* reasons supported making the sentence consecutive." *Id.* (emphasis added). We noted that we were "unsure whether the stated reasons for the sentence applied to both the decision [on the underlying] sentence and the decision to make his sentence consecutive." *Id.* In closing, we stated that sentencing judges "should also explicitly state the reasons for imposing a consecutive sentence," even if they were "rely[ing] on the same reasons for imposing" the underlying sentence. *Id.* at 275. The majority's reliance on the written order's reference to the hearing record as establishing the reasons for consecutive sentences suffers from the same fatal defects we discussed in *Hill.*

When a sentencing court states no reason on the record for imposing consecutive sentences and then enters a written order that simply refers to the reasons already stated on the record as the basis for the consecutive sentences, the court hasn't given any reason for its decision. There are no "reasons" stated for consecutive sentences to refer to. As the old song goes, "Nothing from nothing leaves nothing." Billy Preston, *Nothing from Nothing, on The Kids & Me* (A&M 1974). It's notable that the State, for its part, doesn't even make the argument that the majority latches onto to affirm the sentences here. Because the reasons stated on the record do not include reasons for consecutive sentences, the written order's reference to the hearing record fails to satisfy the rule.

So we turn to "the reasons set forth above" in the written order to see if the court provided written reasons for consecutive sentences. The order stated:

> IT IS THEREFORE ORDERED that taking into account Defendant's age, attitude, criminal history, and employment, financial and family circumstances, as well as the nature of the offense, including whether a weapon or force was used in the commission of the offense, the recommendations of the parties, and other matters reflected in the Court file and record, for the protection of society and rehabilitation of Defendant:

> **Prison.** Pursuant to Iowa Code Sections 901.5, 902.3 and 902.9, Defendant is committed to the custody of the director of the Iowa Department of Corrections for an indeterminate term, not to exceed **two years**. The Sheriff shall transport Defendant to the reception center designated by DOC. Defendant shall be given credit for time previously served in connection with this offense.

The State's actual argument in its brief is that the above-quoted language in the written order satisfies rule 2.23—not, as the majority finds, that the statements on the record were sufficient. The court of appeals declared this written language sufficient "by the slimmest of margins."

The lengthy recitation of sentencing considerations in the order reads like an all-inclusive list. The list nearly mirrors the factors set forth in Iowa Code §§ 901.3(1) and 901.5. A reader is left wondering: Is there any criminal sentence for which this all-encompassing list would *not* apply?

And therein lies the problem with the sentencing court's blanket recitation. As C.S. Lewis wrote: "If you see through everything, then everything is transparent. But a wholly transparent world is an invisible world. To 'see through' all things is the same as not to see." C.S. Lewis, *The Abolition of Man* 81 (HarperCollins 2001) (1944). Similarly, to state every reason is to state no reason. When the sentencing court provides a list that recites every reason for a criminal sentence—a list that could apply to every defendant for every crime in every case—the court has provided no explanation for the sentence imposed in *this* case against *this* defendant.

As the majority notes, we've addressed boilerplate language in written sentencing orders before. In *State v. Lumadue,* for instance, we held that such language alone doesn't satisfy our rules. 622 N.W.2d 302, 304 (Iowa 2001) (en banc). To hold otherwise would allow sentencing courts, in the majority's own words, to "sidestep the requirements of rule 2.23 and avoid making any explanation for the sentence simply by reusing a one-size-fits-all form."

In *State v. Thacker,* the written order recited that the sentence "is based on all of the available SENTENCING CONSIDERATIONS set out in Iowa Code Section 907.5." 862 N.W.2d 402, 404 (Iowa 2015). We noted our prior rejection of "a boilerplate-language approach that does not show why a particular sentence was imposed in a particular case." *Id.* at 408. When considering "what motivated the district court to enter a particular sentence," we said that an appellate court "cannot guess or simply calculate the rough probabilities." *Id.* at 410. We held that the court failed to adequately state the reasons for its sentence, and we thus vacated the sentencing order and remanded for resentencing. *Id.*

In *State v. Thompson,* the district court used a form that similarly recited that the sentence "is based on all the available SENTENCING CONSIDERATIONS set out in Iowa Code Section 907.5." 856 N.W.2d at 918 (emphasis omitted). The form included a check-the-box menu of reasons ("criminal history," "propensity for further criminal acts," and so on) that the court could individually mark. *Id.* The court, however, left every box unchecked. *Id.* We held that this resulted in a failure to provide reasons for the sentence, and we thus vacated the sentencing order and remanded for resentencing. *Id.* at 921.

The majority follows the thread in each of these cases before abruptly concluding that the sentencing defects in them are distinguishable from this case. I don't see how. The order in this case is not a check-the-box form; it is a precheck-every-box form. Like the forms in *Thacker* and *Thompson,* the all-encompassing list in the written order here fails to particularly disclose the reasons for imposing consecutive sentences.

The majority begins by proclaiming the need for "whys and wherefores," but in the final analysis insists on neither. The written order's bare reference to "reasons . . . stated on the record" doesn't permit the "if I forgot to mention any

reasons for consecutive sentences, then I meant all the same ones as I said for the sentence imposed on the underlying crime" interpretation that the majority offers up. That sort of purpose aligns more with what the all-encompassing list in the written order seems intended to accomplish (and, for the reasons explained, it doesn't). If the statement in the court's written order saves this sentence from violating rule 2.23(2)(*g*), then the bar for a sentencing court to clear to "particularly state the reason for imposition of any consecutive sentence" rests on the floor. Iowa R. Crim. P. 2.23(2)(*g*). No reasons were stated, let alone *particularly* stated, for running the sentences consecutively. I would vacate the sentence and remand for resentencing.

Waterman, J., joins this dissent.